```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/13/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUCIEN SIMPSON-QUIN,

                 Plaintiff,

-against-

ALYSSA MONTEJANO
19 INDIA FEE OWNER LLC,

                 Defendants.

23-cv-08113 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiff Lucien Simpson-Quin ("Plaintiff") initiated these related actions to recover damages for losses incurred allegedly as a result of defamation by Defendant Alyssa Montejano ("Defendant Montejano") and unlawful ejectment by Defendant 19 India Fee Owner LLC ("Defendant 19 India").  *See* Dkt. No. 34 (Plaintiff's Amended Consolidated Complaint, hereinafter the "Complaint" or "Compl.").

Before the Court is Defendant Montejano's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(c), Dkt. No. 43, and Defendant 19 India's motion to dismiss pursuant to Rule 12(b)(1), 12(b)(6), and alternatively 12(d), Dkt. No. 48.  For the reasons set forth below, Defendant Montejano's motion to dismiss is GRANTED, and Defendant 19 India's motion to dismiss is GRANTED.

**FACTS AND PROCEDURAL HISTORY**

Prior to September 2022, Plaintiff had been in a years-long intimate relationship with Defendant Montejano.[1]  Compl. ¶ 15.  In 2019, the couple moved into a rental apartment on India Street in Brooklyn, New York ("the Apartment") in a building owned by Defendant 19

---

[1] The factual recital is taken from the Complaint, and those facts are, except where noted, assumed true for purposes of this Opinion.

India.  *Id.* ¶ 18.  Plaintiff and Defendant Montejano lived there together until September 16, 2022.  *Id.* ¶ 19.  Plaintiff alleges that in September of 2022, Defendant Montejano made defamatory statements about Plaintiff to the police, to Plaintiff's employer, and to Defendant 19 India.  *Id*. ¶¶ 12–14.  Plaintiff alleges that Defendant Montejano made statements to police regarding an alleged domestic violence incident that occurred on September 9, 2022; Defendant Montejano's written criminal complaint is dated September 10, 2022.  *Id.* ¶¶ 19–21; Dkt. No. 56-1.  These statements formed the basis for a criminal complaint that was filed by the Kings County District Attorney on September 16, 2022 and led to Plaintiff's arrest that same day.  Compl. ¶¶ 19–21.  Plaintiff was detained overnight and then released without bail the following day.  *Id.* ¶ 21.  Plaintiff denies all allegations of domestic violence and says that Defendant Montejano's statements to police were false.  *Id.* ¶¶ 23–24.

   According to Plaintiff, in addition to his arrest and brief incarceration, "[d]ue to Defendant [Montejano's] false statements about Plaintiff's alleged criminal offenses, made in communications to Plaintiff's employer JP Morgan Chase & Co. and landlord, Plaintiff lost employment and his only source of income[.]"  *Id.* ¶ 34.

   On September 19, 2022—three days after Plaintiff's arrest—he was informed by his employer JP Morgan that he was being placed on administrative leave pending an internal investigation.  *Id.* ¶ 35.  According to Plaintiff, the investigation was initiated by Defendant Montejano's unspecified "communications" to JP Morgan about his alleged criminal offenses.  *Id.* ¶ 34.  Following an internal investigation, JP Morgan terminated Plaintiff's employment on October 31, 2022 and did not tell him the reason for his termination.  *Id.* ¶¶ 39–40, 42.

   Plaintiff also alleges that at some point after his arrest on September 16, 2022, Defendant Montejano "convinced Plaintiff's building management [Defendant 19 India] to change the locks

2

to the apartment[.]" *Id.* ¶ 47.  Because of the changed locks, Plaintiff was unable to access the apartment to retrieve his belongings.  *Id.* ¶ 48.  Because of the Temporary Restraining Order ("TRO") automatically entered as part of the proceedings in connection with his arrest on a domestic violence complaint, Plaintiff arranged for a police escort in order to access the Apartment on September 17, 2022 to retrieve his belongings.  *Id.* ¶ 109.  However, an employee of Defendant 19 India informed him that they could not give him access to the Apartment because his name was not on the lease.  *Id.* ¶ 110.  Although Plaintiff was eventually afforded access, again with an apparent police escort, to retrieve some of his belongings, *id.* ¶ 111, in the meantime, Defendant Montejano and "presumably her family and/or friends" allegedly stole or threw away most of Plaintiff's possessions that were in the apartment.  *Id.* ¶¶ 49–56.  These possessions include his passport, clothing, and laptop; Plaintiff also alleges that Defendant Montejano made false statements to take sole possession of and title to a car that the couple had leased jointly.[2]  *Id.*

Plaintiff alleges defamation and tortious interference in business relations claims against Defendant Montejano, and alleges unlawful ejectment against Defendant 19 India.[3]  Both Defendants have moved to dismiss the complaint.  *See* Dkt. Nos. 43, 48.

---

[2] Plaintiff alleges that the "value of the stolen, destroyed, and/or converted property totaled approximately $46,975.61" and the value of the car "was worth approximately $70,000.00."  Compl. ¶¶ 49, 54.

[3] Plaintiff initially filed separate cases against Defendant Montejano and Defendant 19 India, both in the United States District Court for the Southern District of New York. *See Simpson-Quin v. Montejano*, 23-cv-08113; *Simpson-Quin v. 19 India Fee Owner*, 24-cv-02123.  Soon after it was filed, Plaintiff's case against Defendant 19 India was transferred to the United States District Court for the Eastern District of New York.  *See* 24-cv-02123, Dkt. No. 10.  Upon the consent of all parties and their counsel in both cases, the 19 India case was transferred back to this District so that the two cases could be consolidated into the above-captioned action.  *See* 23-cv-08113, Dkt. Nos. 17, 25.  Because the transfer and subsequent consolidation of these cases into one action was agreed to by all parties and their counsel, the parties have waived any objections to the propriety of the Southern District of New York as the venue for this action.

**LEGAL STANDARDS**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for lack of subject matter jurisdiction. A case is dismissed for lack of subject matter jurisdiction when the federal district court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a 12(b)(1) motion, courts "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim only has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. The standard for surviving a motion to dismiss is not difficult to meet. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (the issue on a motion to dismiss is whether a plaintiff is entitled to offer evidence to support its claims, not whether a plaintiff will ultimately prevail). When deciding on a Rule 12(b)(6) motion, the district court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Koch v. Christie's Int'l, PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, courts are not required to accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *See, e.g.*, *Johnson v. Rowley*, 569 F.3d 40, 43–44 (2d Cir. 2009).

Finally, Rule 12(d) states, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). In other words, a motion to dismiss pursuant to Rule 12(d) "must be treated as one for summary judgment when the court considers matters outside the pleadings that do not fall within the limited group of materials that may be considered on a motion to dismiss for failure to state a claim." *Moore v. Dejoy*, 600 F. Supp. 3d 332, 338 (S.D.N.Y. 2022) (references omitted). The plaintiff must have "unequivocal notice of the meaning and consequences of conversion" under Rule 12(d). *Cuffee v. City of New York*, 15-CV-8916 (PGG), 2018 WL 1136923, at *5 (S.D.N.Y. Mar. 1, 2018) (internal references omitted). Once the motion to dismiss is converted to a motion for summary judgment, Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

## ANALYSIS

I.  **Defendant Montejano's Motion to Dismiss is Granted**

Defendant Montejano moves to dismiss the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. No. 44 at 2. For the reasons set forth below, Defendant Montejano's motion is granted.

**A. Plaintiff's Defamation Claims Fail**

Under New York law, a plaintiff establishes a claim for defamation by demonstrating that "(1) the defendant published a defamatory statement of fact to a third party, (2) that the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4) either the false statement was defamatory *per se* or caused the plaintiff special harm." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013). "A false statement constitutes defamation *per se* when it charges another with a serious crime or tends to injure another in his or her trade, business, or profession." *Geraci v. Probst*, 877 N.Y.S. 2d 386, 388 (2d Dept. 2009). New York imposes a one-year statute of limitations on defamation claims. C.P.L.R. § 215(3). "[T]he statute of limitations runs from the time the allegedly defamatory statements are made . . . and *not* when the plaintiff first learned of the defamatory remarks[.]" *Gorokhovsky v. Stefantsova*, 19-CV-08101 (MKV), 2022 WL 17487019, at *5 (S.D.N.Y. Dec. 7, 2022) (emphasis in original).

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996). "Thus, [P]laintiff's defamation claims are subject to the liberal pleading standards of [Rule 8 of the Federal Rules of Civil Procedure], rather than the particularized pleading requirements set forth

6

in New York's C.P.L.R. section 3016." *Neal v. Asta Funding, Inc.*, 13-CV-2176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) (internal references omitted).

Here, Plaintiff alleges that Defendant Montejano made defamatory statements to law enforcement, to JP Morgan, and to Defendant 19 India. Compl. ¶¶ 70–74. The Court will address each allegedly defamatory statement in turn.

### i.    Defendant Montejano's Alleged Statements to Police

According to Plaintiff, "Defendant [Montejano] alleged that Plaintiff 'physically assaulted her by throwing her into a wall and grabbing her wrist which caused pain and swelling[.]'" Compl. ¶ 22. Although the Complaint does not specify to whom the statements were made or the exact wording of Defendant Montejano's statements, in context it appears Plaintiff is referring to statements that Defendant Montejano made to law enforcement on September 10, 2022. These statements to the police were then included in, or formed the factual basis of, a September 16, 2022 criminal complaint filed by the Kings County District Attorney that ultimately led to Plaintiff's arrest. *Id.* ¶¶ 19–23. Plaintiff alleges both that these allegations were false and that Defendant Montejano knew that they were false at the time of her report. *Id.* ¶¶ 23–25, 70.

The Complaint does not adequately allege the date on which the statements forming the basis for the criminal complaint were uttered. Although Plaintiff states that the criminal complaint was filed in court on September 16, 2022, he does not specifically allege when Defendant Montejano made her allegedly defamatory remarks to law enforcement, or to whom those statements were made. Defendant Montejano argues both that lack of specificity as to the date on which the statements were made is fatal to Plaintiff's claim, Dkt. No. 44 at 8, and that, if the exact date was correctly alleged in the Complaint, the claim should still be dismissed as time-

7

barred because it is foreclosed by New York's one-year statute of limitations for defamation claims. *Id.* at 8 n.7; Dkt. No. 55 at 2–4. In support of this argument, Defendant Montejano filed two exhibits with her reply in support of her motion to dismiss: (1) a photographed, one-page excerpt of Defendant Montejano's police report that shows her handwritten statement to police and is dated September 10, 2022 (*see* Dkt. No. 56-1); and (2) an excerpt of Plaintiff's deposition where, after being shown a copy of Defendant Montejano's police report, he agrees that "it was September 10, 2022, when the report with the police was made" (*see* Dkt. No. 56-2).

The total lack of specifics as to where, when, and to whom the allegedly defamatory statements were made is likely fatal to Plaintiff's claims. However, "[a] complaint is 'deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.'" *Ironshore Specialty Ins. Co. v. Color Techs., Inc.*, 23-CV-07526 (JLR), 2024 WL 3634860, at *3 (S.D.N.Y. Aug. 1, 2024) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)). The Court finds that Defendant Montejano's statement to police, viewed in conjunction with Plaintiff's admission that Defendant Montejano made the statement to police on September 10, 2022, can be viewed as integral to the Complaint because it forms the basis of Plaintiff's defamation claim against her, and can provide the necessary specificity even though the document itself is not attached to or incorporated by explicit reference therein.

Plaintiff does not dispute that Defendant Montejano made the allegedly defamatory statements to the police on September 10, 2022. Dkt. No. 55 at 2–4; Dkt. No. 56-2 at 3. The statute of limitations begins to run on the day that the alleged defamatory statements were made, not on the day that the plaintiff learns of the statements. *See Gorokhovsky*, 2022 WL 17487019, at *5. Therefore, the statute of limitations on Plaintiff's defamation claim concerning the

statements Defendant Montejano made to the police began to run on September 10, 2022 and expired one year later on September 10, 2023. Plaintiff initiated the above-captioned action on September 14, 2023, four days after the expiration of the statute of limitations. Accordingly, Plaintiff's defamation claim asserted against Defendant Montejano must be dismissed as time barred. *See Cohen v. Cohen*, 178 N.Y.S.3d 129, 131 (2d Dept. 2022) ("Here, to the extent that the defamation cause of action is based on statements made to police officers that resulted in the plaintiff being arrested, the [New York] Supreme Court properly granted dismissal of that cause of action pursuant to CPLR 3211(a)(5) as time-barred, since the cause of action was commenced more than one year after the statements were uttered.").

### ii. Defendant Montejano's Alleged Statements to JP Morgan and Defendant 19 India

Plaintiff's two remaining defamation claims against Defendant Montejano for statements allegedly made to JP Morgan and to Defendant 19 India, even when read in the light most favorable to Plaintiff, also fail and must be dismissed.

"[I]t is only by pleading the substance of the purported communication that a defendant can challenge and, upon a motion, the court can determine the essential elements of a defamation claim under New York law, including: whether the statement was false; whether it was capable of defamatory meaning; and whether it was 'of or concerning' the plaintiff." *Evilyaoglu Tekstil A.S v. Turko Textile LLC*, 19-CV-10769 (LJL), 2020 WL 7774377 at *3 (S.D.N.Y Dec. 30, 2020). "Even under the more lenient federal [pleading] standard . . . the amended complaint must at least identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Neal*, 2014 WL 3887760, at *3 (internal references omitted).

9

Plaintiff's remaining defamation claims fall short on this standard. He does not allege the content of the statements that Defendant Montejano allegedly made to JP Morgan or Defendant 19 India, nor does he allege the date on which the statements were made or to whom at each entity Defendant Montejano made the defamatory statements. Indeed, Plaintiff's allegations about Defendant Montejano related to JP Morgan are wholly speculative and lack any specifics whatsoever. Rather, apparently relying on the sequence of events, Plaintiff only states that "[d]ue to Defendant [Montejano's] false statements about Plaintiff's alleged criminal offense, made in communications to Plaintiff's employer JP Morgan Chase & Co. . . ., Plaintiff lost employment and his only source of income," without any detail about what, if anything, Defendant Montejano actually said, when she may have said it, or to whom. Compl. ¶ 34. The problems here are readily apparent—as but one example, imagine (and imagine we must, since Plaintiff provides no specifics) Defendant Montejano, assuming she said anything at all, had told JP Morgan merely that Plaintiff had been arrested on charges of domestic violence. That would have been a true statement, and thus not defamatory under the law, even if Plaintiff alleges that the arrest was the product of false and defamatory statements made by Defendant Montejano to the police. Plaintiff also alleges that "Defendant [Montejano] convinced Plaintiff's building management [Defendant 19 India] to change the locks to the apartment[,]" *id.* ¶ 47, but, again, he does not allege how she managed to "convince" Defendant 19 India to change the locks, failing to include any specifics about what was said, when, or to whom. As with the allegations regarding JP Morgan, one can imagine Defendant Montejano telling employees of Defendant 19 India that she had a court-issued Temporary Restraining Order barring Plaintiff from the Apartment and thus needed the locks changed to effectuate that order. That statement would have been true and thus not defamatory, even if in Plaintiff's telling the TRO was procured

through false statements.  Plaintiff's wholly conclusory allegations related to JP Morgan and Defendant 19 India are insufficient to satisfy the pleading standard of Rule 8 for defamation.

Plaintiff readily admits that he is "unaware of the exact statements made by Ms. Montejano," Dkt. No. 51 at 10, but attempts to circumvent this lack of knowledge by stating that "[t]hrough discovery we will become aware of the exact statements the defendant made to JP Morgan Chase & Co. and they would not have led to Plaintiff's termination if they were not clearly defamatory."  Compl. ¶ 73.  This rank speculation is wholly insufficient.  "As a general proposition, a litigant has to state a claim before he or she is entitled to discovery." *Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010).  "Indeed, allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to streamline litigation by dispensing with needless discovery and factfinding where the plaintiff has failed to state a claim under the law." *Id.* (quoting *KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) (internal references omitted)).  Because Plaintiff's Complaint does not contain "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, the Court must also dismiss his defamation claims against Defendant Montejano for alleged statements made to JP Morgan and Defendant 19 India.

### B. Plaintiff's Tortious Interference Claim Against Defendant Montejano Must Be Dismissed

Under New York law, to state a claim for tortious interference with business relations requires that "'(1) the plaintiff had a business relationship with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *Global Packaging Servs., LLC v. Global Printing and Packaging*, 248 F. Supp. 3d 487, 494

11

(S.D.N.Y. 2017) (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt, L.L.C*, 445 F. App'x 102, 105–06 (2d Cir. 2012)).

Plaintiff's tortious interference claim must be dismissed as duplicative of his defamation claim. "A defamation cause of action has 'broad reach' because, 'unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 556 (S.D.N.Y. 2020) (quoting *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458 (1967)). "As such, New York law considers claims sounding in tort to be defamation claims, not only where those causes of action seek damages only for injury to reputation, but also where the entire injury complained of by plaintiff flows from the effect on his reputation." *Id.* (internal references omitted) (collecting cases). Furthermore, "[t]o successfully assert both a cause of action for defamation and tortious interference, a plaintiff must allege an independent source of the alleged harm." *Fahey v. Breakthrough Film & Television Inc.*, 21-CV-3208, 2022 WL 6244313, at *26 (S.D.N.Y. July 7, 2022) (internal references omitted), *report and recommendation adopted*, 2022 WL 4547438 (Sept. 29, 2022); *White v. Pawelsky*, 19-CV-05246 (GRB) (ST), 2021 WL 7908050, at *6 (E.D.N.Y. Mar. 14, 2021) ("Courts have found tortious interference claims duplicative even where the underlying defamation claim is not viable and has been dismissed.") (collecting cases), *report and recommendation adopted*, Order (Mar. 31, 2021).

Here, even if his allegations regarding JP Morgan were something other than entirely speculative, as described above, Plaintiff fails to allege independent bases for his defamation claims and tortious interference claim and for this reason his tortious interference claim must be dismissed. Defendant Montejano's alleged interference with Plaintiff's employment at JP Morgan causing him to lose his job and suffer economic injuries stems, in Plaintiff's telling,

from the reputational damage caused by the alleged defamation. That is, according to Plaintiff, the alleged revelation of Defendant Montejano's defamatory domestic violence allegations led JP Morgan to initiate an internal investigation, place Plaintiff on administrative leave, and eventually fire him. "This sounds in defamation and should be foreclosed as duplicative." *White*, 2021 WL 7908050, at *6 (finding that the plaintiff's claim for tortious interference with prospective economic advantage failed because the facts underlying the claim "flowed from [the] reputational damage" of the plaintiff's defamation claim); *see also Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017) (dismissing the plaintiff's tortious interference claim because "the entire injury pleaded in relation to the tortious interference claims flows from the effect on Plaintiffs' reputation resulting from Defendants' [allegedly defamatory] statements").

Accordingly, Plaintiff's tortious interference claim also fails, and must be dismissed.

\*   \*   \*   \*

Based on the above, Defendant Montejano's motion to dismiss is granted, and all claims asserted against her are dismissed.

### C. Leave to Amend

"[I]t is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

Here, the Plaintiff has had multiple opportunities to amend his complaint to properly plead these claims and has been unable to come close to adequate pleading as to any alleged statements made by Defendant Montejano to JP Morgan or to Defendant 19 India. This is true

13

despite an amendment following the filing of Defendant Montejano's first motion to dismiss (which previewed nearly all of the same arguments), and discovery proceeding while these motions were *sub judice*. Moreover, prolonging this litigation by affording yet another opportunity to amend, with no indication that a cause of action could be properly pled on these allegations, would work a substantial prejudice on Defendant Montejano, an individual who has already expended significant resources defending herself from a seemingly meritless lawsuit arising out of a failed romantic relationship. Accordingly, leave to amend as to statements allegedly made to JP Morgan and Defendant 19 India is denied.

With respect to the defamation claim asserted against Defendant Montejano for the statement she made to the police, any amendment would be futile because the claim is time barred. *See Greer v. Fox Corp.*, 20-CV-5484 (LTS) (SDA), 2022 WL 4093155, at *6 (S.D.N.Y. Sept. 7, 2022) (denying leave to amend a defamation claim because the claim was time barred and any amendment would be futile). Moreover, Plaintiff's tortious interference claim fails as a matter of law, and thus any amendment thereto would also be futile. Therefore, Plaintiff is denied leave to amend for the defamation claim regarding Defendant Montejano's statements to police and for his tortious inference claim.

## II.  Defendant 19 India's Motion to Dismiss is Granted

Next, the Court turns to Defendant 19 India's motion to dismiss. Dkt. No. 48. Defendant 19 India moves to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(d) of the Federal Rules of Civil Procedure. *See generally id.* For the following reasons, Defendant 19 India's motion to dismiss is granted.

### A. Plaintiff Was Not Unlawfully Evicted

Plaintiff alleges that he resided in the Apartment, which is located in a building that is owned by Defendant 19 India, with Defendant Montejano from September 2019 to September 2022. Compl. ¶¶ 3, 8, 9, 18. Plaintiff's name was on the lease dated on September 17, 2019, but his name was not included on the "latest lease renewal form," which was executed on an unknown date, due to an alleged "administrative error." *Id.* at ¶¶ 85–86.

According to Plaintiff, at some point after his arrest on September 16, 2022, "Defendant [Montejano] convinced Plaintiff's building management [Defendant 19 India] to change the locks to the apartment" and that Defendant 19 India denied Plaintiff access to the apartment on September 17, 2022. *Id.* ¶¶ 47, 48, 89, 90. Despite Plaintiff's email correspondence with an employee of Defendant 19 India, Plaintiff was unable to immediately schedule a time to pick up his belongings and was only allowed access to the apartment for a short period of time to retrieve necessary items. *Id.* ¶¶ 108–112. The majority of his possessions were left behind, and Defendant Montejano, who had uninterrupted access to the apartment, and her family and friends allegedly stole, destroyed, or discarded his remaining possessions. *Id.* ¶¶ 49–56.

As an initial matter, the Court notes that Plaintiff pled the incorrect cause of action against Defendant 19 India. Under New York law, a plaintiff must establish, among other things, that he is the owner of the real property at issue to prevail on a cause of action for ejectment. *See City of New York v. Prudenti's Rest. On the Riv., Inc.*, 203 A.D.3d 1127, 1127 (2d Dept. 2022). Plaintiff does not allege that he owned the Apartment he shared with Defendant Montejano; rather, he alleges that he was a tenant in the Apartment building owned and managed by Defendant 19 India. *See, e.g.*, Compl. ¶¶ 8, 84. Thus, despite naming the cause of action unlawful ejectment, it appears Plaintiff intended to plead unlawful or wrongful eviction. *See id.*

15

¶¶ 47 ("he was the victim of an unlawful eviction"); *id.* ¶¶ 127–28 (citing authority related to eviction law).  Although pleading the incorrect cause of action could alone provide a basis to dismiss the Complaint against Defendant 19 India, because it appears as though Plaintiff intended to state a claim of unlawful eviction, for purposes of evaluating the motion, the Court will construe Plaintiff's claim against Defendant 19 India to be unlawful eviction.

By Plaintiff's own account, he was not denied entry to the Apartment in between his arrest on September 16, 2022 and the issuance of the TRO on September 17, 2022.  Nor could Plaintiff have been denied entry during this time because he was imprisoned after his arrest and held overnight, *see id.* ¶ 21, making it impossible for him to attempt to enter the Apartment until he was released from custody after the TRO was issued.  Thus, Plaintiff was legally barred from the Apartment after his release on September 17, 2022, because it was the residence of the beneficiary of the TRO, Defendant Montejano, meaning that Defendant 19 India could not lawfully allow him to enter the Apartment.  Contrary to Plaintiff's assertions, Defendant 19 India's alleged refusal to allow Plaintiff to enter the Apartment was not unlawful; in fact, its refusal was proper and required by court order.  Because a claim for unlawful eviction requires that the alleged eviction actually be unlawful, *see* NY RPAPL § 853, and because Defendant 19 India's alleged refusal to allow Plaintiff to enter the Apartment was lawful, Plaintiff has not, and cannot, allege a valid claim for unlawful eviction for any period in which the TRO was in effect, Defendant Montejano resided in the Apartment, and Plaintiff was denied unfettered access to the Apartment.

Moreover, Plaintiff's name was not on the operative lease agreement for the Apartment. Compl. ¶¶ 86, 88.  According to Plaintiff, this was due to an alleged "administrative error," *id.*, but he does not allege that he ever attempted to correct this error to make sure his name was on

16

the lease. *See* Dkt. No. 34-6 (Exhibit to Plaintiff's Complaint showing that, at least since August 10, 2020, more than two years before the events at issue in this case, lease-related documents from Defendant 19 India were addressed only to Defendant Montejano). Thus, Plaintiff had no tenancy rights at the time he claimed he was unlawfully denied access to the Apartment, regardless of the TRO, because he was not a legal tenant of the Apartment.[4] Thus even setting aside the existence of the TRO (which alone would defeat a claim for unlawful eviction), because Defendant Montejano was the tenant of the Apartment, *not* Plaintiff, Defendant 19 India could change the locks at Defendant Montejano's request, and that action did not result in an unlawful eviction of Plaintiff.

### B. Plaintiff's Damages Cannot Meet the Diversity Threshold

Finally, Defendant 19 India argues that even if Plaintiff has adequately alleged unlawful eviction, the value of Plaintiff's claim is less than $75,000 and, therefore, the action should be dismissed for lack of subject matter jurisdiction. Dkt. No. 70 ¶ 23. Defendant 19 India specifically disputes Plaintiff's inclusion in his damages calculation of the value of Plaintiff's Audi Q7, which Plaintiff alleges was stolen by Defendant Montejano "as a direct result of [Defendant 19 India's] unlawful ejectment[.]" Compl. ¶ 95; Dkt. No. 70 ¶ 16.

Diversity jurisdiction is satisfied where the amount in controversy "exceeds the sum or value of $75,000" and the parties are "citizens of different states." 28 U.S.C. § 1332. Defendant 19 India does not object to the citizenship of the parties; Defendant 19 India only argues that the amount in controversy requirement is not satisfied. Dkt. No. 70 ¶¶ 23–26. Courts have long established a presumption in favor of the plaintiff when a defendant asserts that the amount in

---

[4] Plaintiff alleges that he "paid the majority of the rent" and the "[l]ease payments were deducted from [his] personal checking account[.]" Compl. ¶ 47. This is immaterial to the analysis of whether Plaintiff was a tenant of the Apartment and entitled to bring a claim for unlawful eviction.

controversy is insufficient to sustain diversity jurisdiction, provided that the plaintiff's claim appears to have been made in good faith. *Adler v. Payward Inc.*, 827 F. App'x 133, 135 (2d Cir. 2020). To justify dismissal on this ground, "[i]t must appear to a legal certainty that the claim is really less than the jurisdictional amount[.]" *Id.*

Defendant 19 India is correct that Plaintiff's Complaint does not support a finding that the amount in controversy at issue in the unlawful eviction claim exceeds $75,000. Plaintiff alleges that the value of his stolen, destroyed, and discarded belongings that he could not retrieve from the Apartment should be counted towards the amount in controversy. *See* Compl. at 22, Prayer for Relief ¶ (k). This is incorrect. Defendant 19 India had no legal responsibility to ensure the safety of Plaintiff's belongings from a person who was, if not the sole tenant, at a minimum a lawful co-tenant. As discussed above, Defendant 19 India was barred by court order from giving Plaintiff unfettered access to the Apartment while Defendant Montejano was residing there. During that period, Plaintiff's belongings were in Defendant Montejano's apartment, and Defendant 19 India had no obligation to safeguard Plaintiff's property while it was located inside an apartment occupied by a lawful tenant. By Plaintiff's own account, Defendant 19 India acted reasonably in assisting Plaintiff, when accompanied by a police escort as required by the TRO, with accessing the Apartment temporarily within a reasonable amount of time. *See id.* ¶¶ 109–112; *see also* Dkt. No. 34-8 (Exhibit to the Complaint, showing email correspondence between Plaintiff and building management). The costs associated with his stolen or discarded possessions were thus not caused by any improper action or inaction by Defendant 19 India; rather, his possessions were allegedly "stolen, destroyed, and/or converted" by Defendant Montejano and her family and friends. *See, e.g.*, Compl. ¶¶ 49, 92, 93. Finally, Plaintiff's attempt to include the cost of the car that he co-leased with Defendant Montejano as

part of the amount in controversy as to Defendant 19 India also fails. The Complaint entirely fails to explain how Plaintiff's restricted access to the Apartment (even assuming such restriction was improper or the fault of Defendant 19 India, which, as explained, it was not) was the cause of Defendant Montejano's representations to the car dealership that resulted in her assuming sole title to the car on which she was a legal co-lessee. *See also* Dkt. No. 70 ¶ 16.

At best, assuming that Plaintiff has some valid claim to the offering of a lease renewal by Defendant 19 India (even though he was not a named tenant on the operative lease) or to being given the chance to resume residence in the Apartment once Defendant Montejano had vacated the premises in the fall of 2022 (even though nowhere in the Complaint does Plaintiff allege he made either of these requests or would in fact have resumed his residence or sought to renew the lease), by Plaintiff's own account, he only suffered $29,456.86 in damages arising from the need to arrange substitute housing when he could not reside in the Apartment after September 16, 2022. Compl. ¶ 99. This is tens of thousands of dollars short of the $75,000 amount in controversy threshold, even assuming for these purposes that Plaintiff has a valid claim of unlawful eviction after Defendant Montejano had vacated the Apartment. Accordingly, the Court finds that it is a "legal certainty that [Plaintiff's unlawful eviction claim] is really less than the jurisdictional amount," *Adler*, 827 F. App'x at 135, and the claim must be dismissed for lack of subject matter jurisdiction.

### C. Leave to Amend

Here, as noted above, Plaintiff has had multiple opportunities to amend his complaint to properly plead an unlawful eviction claim and has repeatedly failed to do so, and Plaintiff could not even properly plead the correct cause of action against Defendant 19 India, much less establish potential liability for damages in excess of $75,000 for this defendant. Because the

19

Court finds that the claim fails as a matter of law and on jurisdictional grounds, it would be futile for Plaintiff to make yet another attempt at amending the complaint to properly allege a cause of action against Defendant 19 India.  Accordingly, further leave to amend is denied.

## CONCLUSION

For the reasons explained above, Defendant Montejano's motion to dismiss (Dkt. No. 43) is granted, and Defendant 19 India's motion to dismiss (Dkt. No. 48) is granted.  Plaintiff is denied leave to again amend his complaint.  The Clerk of Court is directed to terminate Dkt. Nos. 43 and 48.  Defendant Montejano is hereby ORDERED to submit a letter to the Court within 7 days of this Opinion & Order informing the Court as to whether she wishes to pursue her counterclaims in light of the dismissal of all claims against her.

Dated: January 13, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge